The circuit is now in session. Judge Kristen, can you hear us? I can now. Yes, I can hear you. Okay, and we can see and hear you. Good, okay. I'm all set. Okay. Is the time set for argument in United States v. Morrison? Mr. Ness? My name is David Ness. I'm with the Federal Defenders of Montana, and I represent Orville Morrison. This case has been pending for over six years now. And during that period of time, Mr. Tatarka and I were talking earlier, arguments have been made back and forth. They've been abandoned in response to emerging case law, and I think we're finally here for the last time. I raised a procedural issue as well as an argument, just arguing that Begay was wrongly decided, but I'm not going to deal with those during oral argument. So the claim that's left is Mr. Morrison's claim that voluntary manslaughter is not a crime of violence that can serve as a predicate to support his Section 924C conviction. Begay was a little bit differently situated. He was convicted of second-degree murder, which is defined as a killing of a human being with malice, with malice of forethought. To kill with malice of forethought means you have to either act intentionally or recklessly with extreme disregard for human life. There's actually four different mens reas that apply to malice of forethought, and that's an intent to kill, an intent to commit serious bodily injury, essentially acting with a depraved heart, or your felony murder-type homicides. Voluntary manslaughter is different in that it's the unlawful killing of a person that's taken upon a sudden quarrel or in a state of passion. Similar to malice, it requires proof that the defendant acted intentionally with an extreme disregard for human life. And although, as a practical matter, both second-degree murder and voluntary manslaughter require proof, at the very least, that the defendant acted with extreme recklessness, I think it's important to note the obvious, and that is that voluntary manslaughter is a lesser-included offense of second-degree murder. So the issue in Begay, what made Begay difficult, was the question of whether second-degree murder is sufficiently oppositional in the sense of pardon, right, to qualify. And we have said that the mental state, and I think you just acknowledged it, that the mental state for voluntary manslaughter is the same as the mental state for second-degree murder with the qualification that the killing occurred in the heat of passion or on a sudden provocation. So why does the addition of heat of passion or adequate provocation make the action any less oppositional than it is in the case of second-degree murder? I don't know that it always does, to be honest, and they have that quote out of the Paul case that basically says that, you know, you can commit with extreme recklessness a crime, but have that added addition of extreme provocation that would render it not second-degree murder, but voluntary manslaughter. I'm having a hard time arguing this, I'll admit it to you. But, no. But isn't it because, counsel, here's what I'm grappling with. I agree this is really slippery, but the whole point, right, and the statutory definition is that voluntary manslaughter is a killing without malice, and we've said that the defining characteristic, right, is intent without malice. That's the defining characteristic of voluntary manslaughter. So it is true that sort of this turducken, maybe that's seasonal, it's a lesser included, right, but it's an affirmative defense. And so once that is put forward and the judge decides, yes, the facts would allow a reasonable juror to decide heat of passion, you know, in this particular fact pattern, then the prosecution has the burden to disprove heat of passion. And if the prosecutor doesn't meet that burden, right, then they haven't shown malice. Correct. And the way the case law phrases it, too, is that essentially once you can prove that heat of passion  then that does away with malice, and that's why voluntary manslaughter doesn't have malice. The difficult thing I think that Judge Miller is trying to get at is this sort of overlay from Borden about a crime of violence and the notion of an oppositional force. Right, right. Being directed at someone or toward someone. Judge Miller, I don't mean to take words out of your mouth, but if that's what you're getting at, that's what I think is tough to reconcile here. That's right. Right. Certainly mere recklessness doesn't meet under Borden, doesn't make a crime oppositional enough. This court in Begay has said, well, extreme recklessness or depraved heart-type recklessness can, in fact, meet that. Even though, you know, as the dissent pointed out, and Judge Acuda and her dissent in the majority acknowledged there are second-degree murder cases involving drunken highway accidents. They're extreme, but they nevertheless were. I guess my point is that because voluntary manslaughter does not require malice, and it is a lower degree of homicide, if you will, than second-degree murder, that that should affect this court's analysis of what recklessness means in that context. And so I would simply argue that I think, as this court stated in Begay, that the elements of second-degree murder stand in stark contrast to the elements of offenses that do not require showing a malice of forethought. And given that, I would just urge the court not to extend Begay into this context, into the voluntary manslaughter context. And I... So just so I understand, you would limit Begay to the second-degree murder? To second-degree murder, yes, Your Honor. And to its facts? Yes. And if you... Do you want to reserve the rest of your time? Sure. Thank you. Mr. Starka, welcome back. Thank you. May it please the court, Tim Starka of the District of Montana, on behalf of the United States. As this court decided at Begay, killing either intentionally or recklessly with extreme disregard for human life requires the... constitutes the use of force against another, as that term is used for purposes of 924C. As Mr. Ness discussed, voluntary manslaughter requires those same mental states. That's clear from the Paul case, particularly page 499. Can I stop you right there? Why do you think that's clear from the Paul case? I reach a different conclusion from Paul. Well, Paul specifically says at 499 that voluntary manslaughter has the same mental states as murder, and then in parentheses says intentionally or recklessly with extreme disregard for human life. It also says, if you read our jury instructions and sort of put these together, what Paul is talking about is the showing of heat of passion. I know you know this. That the showing of heat of passion negates that finding of malice. So what's your best shot at convincing me that it's the same mens rea, please? Well, so I think it's worth taking a step back and looking at the history, as this court did in footnote 8 of Begay. So historically, voluntary manslaughter was an intentional killing mitigated by the heat of passion adequate provocation. The notion behind that is that, and this is from the Lafave criminal law at 15.2h, as well as 14.1a, which is the section of Lafave that this court cited in Begay and Pineda Duvall. So historically, voluntary manslaughter was intentional killing where the moral culpability of that was reduced by the fact that it occurred in the heat of passion upon adequate provocation. As this court noted in Begay, eventually second-degree murder got expanded to those mental states, intentional plus recklessness with extreme disregard for human life, as well as intent to cause great bodily injury and felony murder. As this court explained in Paul, it then became necessary to expand voluntary manslaughter from intentional murder, intentional killing, to also include extreme recklessness because otherwise you'd end up with this analytical difficulty of an intentional killing based on heat of passion would be mitigated, but an extremely reckless killing based on heat of passion would not be mitigated. So the best way that I can say it in terms of the common law terms is malice of forethought is a way of capturing, in terms of moral culpability, the killing of the intentional or extremely reckless killing. And in terms of moral culpability, we say that is negated by the existence of the provocation. How does that fit, then, with the Section 1111, which says that manslaughter is homicide committed without malice? Well, as Paul says, there's two ways a killing can be without malice. The malice can either be negated, a case where you have an intentional killing or something the equivalent of an intentional killing, but under the conditions of heat of passion. The other alternative is the malice can be absent, and that's the involuntary manslaughter analysis. The mental state is lower, and we say that malice is absent in those cases. But I would recommend the Court's attention again to the criminal law by Lefebvre at 14.1, which, again, is cited in McGee and expressly says that the common law terms are insufficient to address all of the nuances as the case law has developed, and that's why we turn to the elemental analysis. And as a matter of the elements, it's absolutely clear that voluntary manslaughter requires the killing either be intentional or committed recklessly with extreme disregard for human life. The other point that I would make is that although, as McGee makes clear, targeting in McGee, it doesn't require a specific target, but involuntary, and so that isn't a necessary requirement to meet the requirements of Borden, but in voluntary manslaughter, there will always be a conscious target. The killing could be still committed recklessly. For example, you could be provoked by someone and intend to shoot recklessly near them to scare them and end up killing them. That would be a killing with reckless disregard for human life based on adequate, but still mitigated by adequate provocation. But unlike the sort of close cases in McGee, the reckless driving cases, for example, and Pineda-Deval expressly says this at page 1040, that those reckless cases could either be murder or involuntary manslaughter depending on where they are on the scale of recklessness. You don't have those type of situations with respect to voluntary manslaughter because you only get voluntary manslaughter when there is adequate provocation when the killing, intentional or extremely reckless killing, was based on adequate provocation. And again, I would recommend the court to Lefebvre, and this would be at 15.2G, which is the discussion that there always is a specific target. There's only rare cases where it could be a third party, someone other than the provoker who's killed. So that isn't necessary because Begay controls here, but it does provide the court, I think, some reassurance in terms of what matters for the crime of violence analysis, the intentionality or the action against another. You don't get those same close cases that you do with respect to second-degree murder. Since you brought up involuntary manslaughter, do you concede that involuntary manslaughter does not qualify as a crime of violence? Yes, Your Honor, and I'm trying to remember the... I know it's cited in the brief. Benally, that's what it is. And there is no question there that involuntary manslaughter can be based on general recklessness and that that wouldn't meet the standard of Borden. If the court has no further questions. Thank you. Thank you. Mr. Nass, you have time left. I guess something I was just thinking about, keeping in mind that this Court's decision is not only going to affect 924C cases, it's also going to affect armed career criminal cases and Section 3559 cases. But, you know, I was trying to think of an example of something where it could be a voluntary manslaughter involving a car, something like someone in the heat of passion after finding someone with his or her spouse chases that person in a car accident, person gets killed, charged with involuntary manslaughter. And one of the things that both the Supreme... that the Supreme Court has noted, and this Court noted in Begay too, is that you kind of want to look at the purposes of all of these statutes like ACCA and 924C. And in Borden, you know, the Supreme Court talked about the type of people, the dangerous type of criminals we want to keep guns away from to make that added penalty to go from maximum 10 years to a minimum of 15 years. And do we want to do that with someone who is basically only reckless? And they answered that question, no. And so just kind of going back to my analogy, which I hope is apt, are those the type of people that we would necessarily want to subject to penalties under ACCA? And that's why I think one reason why this Court should confine Begay to its facts and to second degree to the Section 1111 murders and not to voluntary manslaughter. Well, I'm not sure that... I'm not sure it helps your case to ask, you know, what do we think Congress wanted to do? Because Congress also enacted the residual clause, so they clearly thought that this would be covered. I think they did. So, you know, now that turns out to be unconstitutional and we have to answer the textual question of does it qualify under the elements clause. But in terms of what they wanted, it does seem like they wanted it covered, doesn't it? And they could go back and cover it. I mean, that's the thing. This is a drafting problem that's really a congressional problem, correct? And so I think they could go back and fix it. They just could do something differently than the residual clause, add more enumerated offenses or even add enumerated offenses in the case of 924C. So... All right. Thank you. Thank you very much. Thank both counsel for their helpful arguments and the cases submitted. All rise.
judges: McKEOWN, CHRISTEN, MILLER